**Larry KING, Appellant,**

v.

**Captain PATTERSON, Varner Unit, Arkansas Department of Correction, Appellee.**

No. 92–3543.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1993.

Decided July 19, 1993.

Rehearing Denied Aug. 10, 1993.

Appellant, pro se.

David Eberhard, Asst. Atty. Gen., Little Rock, AR, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Larry King, an inmate of the Arkansas Department of Correction, appeals the District Court's [1] order dismissing his complaint under 42 U.S.C. § 1983 alleging excessive use of force by the defendant, Captain D.E. Patterson. We affirm.

I.

King—who had been at the Varner Unit for two-and-a-half days—registered for sick call at about 4:30 or 5:00 a.m. on March 22, 1991. He did not, however, show up for sick call, which began at 5:00 a.m. King claims he had a slip for a doctor's appointment on that day, but he was unable to produce it. Because of this slip, he says, he was allowed to stay in the barracks rather than go to work on the hoe squad that morning. Later in the day, an officer told him the doctor was not at the prison and made him go to the holding pen at the "sally port" gate to be taken with the other late inmates to the field. When Patterson came to pick them up to take them to their work assignments, King refused to go. King claims that he did not want to go because of a back problem, and that he motioned to Patterson to come to him so he could explain his situation. Patterson contends that King would not come out, and that King said "You come get me." In order to handle the situation safely, Patterson drove the other inmates to the field and came back to get King an hour later.

King claims that when Patterson returned, he came into the holding pen and attacked him, kicking him repeatedly in the head until he was bleeding and bruised. Patterson, on the other hand, says that when King still would not come out of the pen to go to work, he ordered him to hold out his hands to be cuffed. King then kicked Patterson in the groin and grabbed his legs, knocking both men to the ground. Officer Williams, who was behind Patterson and corroborates his version of what happened, helped subdue King and cuffed his hands behind his back. In accord with prison policy, another officer escorted King to the infirmary. King claims that he was bruised, and that his head was cut and bleeding. Captain Patterson, Officer Williams, Officer Robertson, who escorted King to the infirmary, Officer Craddock, who escorted King to the mental-health facility later that evening, and Nurse Bradberry, who saw King for other reasons on March 24 (two days after the incident), March 28, April 5, April 8, and April 22, all testified that King had no visible head injuries and was not bleeding.

A year later, King filed a complaint against Patterson alleging that his right to be free from cruel and unusual punishment had been violated. Three months later he filed a motion requesting a jury trial, which the Court denied. He then filed a motion requesting the appointment of counsel, which the Court also denied. After an evidentiary hearing before the magistrate judge, the Court adopted the magistrate judge's recommended

1. The Hon. Elsijane Trimble Roy, Senior United States District Judge for the Eastern and Western Districts of Arkansas, adopting the recommendation of the Hon. Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

findings and dismissed the case. King appeals on three grounds: (1) the Court erred in concluding that Patterson did not use excessive force on King; (2) the Court erred in failing to appoint counsel for King; and (3) the Court deprived King of his right to a jury trial.[2]

## II.

■ First, King argues that the District Court's findings of fact are clearly erroneous. King—who, we will assume for purposes of our decision, was disabled and could not work—argues that the Court erred in not believing his version of the facts, that is, that Patterson came into the pen and kicked him in the head repeatedly. Having reviewed the record, we disagree with King and find ample evidence to support the Court's findings. In any event, they are not clearly erroneous.

■ King next argues that the Court erred in failing to grant his motion for appointment of counsel. Because the case was neither factually nor legally complex, the complaint alleged a single incident of excessive force, and the Court felt that King had clearly communicated his concerns and could adequately present the facts of his case to the Court, it denied his motion. King claims that he should have had counsel since he was a mental patient. From the record, it appears that the magistrate judge knew of King's mental and physical medical history. It would have been better if he had taken King's mental medical history into account, or, if he did, mentioned that he did so, when deciding whether to appoint counsel, but his failure to do so did not make the denial of counsel an abuse of discretion in the circumstances of this case.

■ Finally, King claims that the Court erred in denying his request for a jury trial. Federal Rule of Civil Procedure 38(b) provides that a party may demand a trial by jury by serving a written demand upon the other parties not later than 10 days after the service of the last pleading directed to the jury issue. If a timely demand is not made, the right to a jury trial is waived. Fed.

R.Civ.P. 38(d). On March 19, 1992, King filed his complaint. Patterson answered on April 6. On May 27, King filed an amended complaint which contained no new issues, but merely clarified the relief he was seeking. Patterson answered the amended complaint on June 10. King's demand for a jury came on June 24 and was therefore out of time.

We affirm the judgment of the District Court.

---

2. King also argues that the Court erred in disallowing several of his requested witnesses. The

Court did not abuse its discretion, and we see no need to address the issue further.